Ronald LACEY, Individually and as Special Administrator of the Estate of Rebecca Lacey, Deceased; and Glenda Richie Tomlinson, Plaintiffs,

v.

BEKAERT STEEL WIRE CORPORATION; Crawford County, Arkansas; City of Van Buren, Arkansas; CNA; the Pillsbury Company; Fred McLane; and Bruce Shaw and Virgil Bracken, Co-Executors of the Estate of H.H. (Mike) Meyer, Deceased, Defendants.

Civ. No. 85–2046.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Oct. 2, 1985.

Robert S. Blatt and Charles Karr, Fort Smith, Ark., for plaintiffs.

G. Alan Wooten, Warner & Smith, Fort Smith, Ark., for Bekaert Steel Wire Corp. and CNA.

Joseph C. Self, Deputy Pros. Atty., Van Buren, Ark., for Crawford County, Ark.

Gary R. Cottrell, Van Buren, Ark., for City of Van Buren, Ark.

Robert L. Jones, Jr., Jones, Gilbreath & Jones, Fort Smith, Ark., for Pillsbury Co.

Thomas Harper, Harper, Young, Smith & Maurras, Fort Smith, Ark., for Fred McLane.

James A. Arnold, II, Shaw, Ledbetter, Hornberger, Cogbill & Arnold, Fort Smith, Ark., for Bruce Shaw and Virgil Bracken, Co-Executors of the Estate of H.H. (Mike) Meyer, Deceased.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

### I. Introduction

Plaintiffs initiated this action on February 19, 1985, against the various defendants, for damages sustained in a one-vehicle accident which occurred on July 30, 1982. Specifically, plaintiffs allege that on the aforementioned date the decedent, Rebecca Lacey, operated a vehicle owned by plaintiff, Ronald Lacey, and occupied by plaintiff, Glenda Tomlinson, on "Lee Creek Road" in Crawford County, Arkansas. Lee Creek Road ends at the north bank of the Arkansas River. Rebecca Lacey drove the vehicle off of the end of Lee Creek Road into the Arkansas River. Rebecca Lacey drowned and Glenda Tomlinson sustained personal injuries. Ronald Lacey's vehicle was damaged.

Defendants, Bruce Shaw and Virgil Bracken, are co-executors of the estate of H.H. Meyer, who is now deceased. It is alleged that H.H. Meyer and defendant Fred McLane owned the property in 1968 that would now be east of the center line of Lee Creek Road and immediately to the north of the point of the occurrence. Defendant, Pillsbury Company (Pillsbury) is the predecessor in title of defendant, Bekaert Steel Wire Corporation (Bekaert), to the property that would now be west of the center line of Lee Creek Road, and the property immediately to the north of the point of occurrence.

In April of 1968, H.H. Meyer, defendant McLane, and defendant Pillsbury conveyed

to defendant Crawford County, Arkansas (Crawford County), an 80–foot right-of-way for Lee Creek Road running approximately 1663.25 feet from the north bank of the Arkansas River to the north. Crawford County accepted the easement for use as a public road.

In June, 1974, Pillsbury conveyed its interest in the property to Bekaert. In May, 1975, Crawford County annexed the land at the point of occurrence and immediately north thereof, to defendant City of Van Buren, Arkansas (Van Buren). The land was accepted by Van Buren that same day.

In July, 1976, Bekaert contracted with Van Buren for Van Buren to issue Act 9 bonds to raise capital for the construction of Bekaert's industrial plant. The agreement required Bekaert to maintain general public liability insurance against personal injury or death occurring in or about the plant and property damage insurance against damage on or about the plant. The agreement further provided for Bekaert's indemnification of Van Buren for liability from claims arising from the conduct or negligence of Bekaert, its assignees, or agents. The land described in the agreement includes Lee Creek Road at the point of occurrence and immediately to the north thereof.

At the time of the accident, there was a policy of insurance issued by defendant CNA in accordance with the Bekaert-Van Buren agreement. Van Buren is an alleged insured under the policy. Plaintiffs allege that CNA is therefore subject to direct-action suit pursuant to Ark.Stat.Ann. § 66–3240.

Plaintiffs contend that Bekaert, Crawford County, Van Buren, Pillsbury, McLane and H.H. Meyer were negligent in the dedication, acceptance, design, construction, maintenance, marking, and guarding of Lee Creek Road at the point of occurrence. In this regard, plaintiffs assert essentially that any negligence of Bekaert is "imputed" to Crawford County, whose negligence is "imputed" to Van Buren, whose negligence is "imputed" to Pillsbury, whose negligence is "imputed" to McLane and H.H. Meyer, whose negligence is "imputed" to United States Trust Company of New York, Trustee. This negligence is alleged to arise from the following particulars:

(1) dedication and acceptance of a public road that would not benefit the public and which ended at the north bank of the Arkansas River;

(2) designing and constructing a public road that does not benefit the public and ends at the north bank of the Arkansas River;

(3) designing, constructing and paving a road that ends at the north bank of the Arkansas River which appears to be a "through" highway, which is marked with double yellow lines;

(4) failing to erect barricades and warning devices and signs to prevent persons from driving into the Arkansas River;

(5) inaccurately warning persons that the road ended in three-fourths of a mile;

(6) failing to close the road and generally failing to exercise ordinary care.

Although Ark.Stat.Ann. § 12–2901 renders counties, cities and political subdivisions immune from tort liability, plaintiffs contend that this immunity violates section 1 of the fourteenth amendment to the United States Constitution. This argument is premised on the fact that Ark.Stat.Ann. § 12–2901 requires political subdivisions to carry liability insurance on all motor vehicles, but does not require them to carry general liability insurance. Ark.Stat.Ann. § 66–3240 authorizes a direct action against an insurance carrier when a political subdivision not ordinarily subject to suit carries liability insurance, but this statute does not require political subdivisions to carry such insurance.

Van Buren moved to dismiss the complaint under Rule 12(b)(6), Fed.R.Civ.P., based upon the "statutory" immunity and plaintiffs' failure to utilize sections 7.20.01 and 7.20.02 of chapter 7.20 of the Van Buren Municipal Code which authorize an administrative claims procedure against Van Buren.

Crawford County moved to dismiss, pursuant to Ark.Stat.Ann. § 12–2901, and because plaintiffs' complaint and exhibits demonstrate that Crawford County had no control over Lee Creek Road for more than seven years prior to the accident. However, because counsel for Crawford County failed to submit a brief in support of its motion as required by Local Rule 20 of the Rules for the Eastern and Western Districts of Arkansas, this court, by order dated March 11, 1985, denied Crawford County's motion and directed it to submit an answer to the complaint within 13 days. The answer was duly submitted reaffirming its defenses raised by motion and adding several other factual defenses.

Shaw and Bracken filed an answer to the complaint, raising factual defenses and affirmatively alleging that this court lacks jurisdiction of the subject matter or persons of these separate defendants, Shaw and Bracken. They further contend that the complaint fails to state a cognizable claim as to them, and that the action is barred by the statute of limitations.

Bakaert answered the complaint raising the defenses of comparative fault, unavoidable casualty, and failure to state a claim upon which relief can be granted.

CNA moved to dismiss under Rules 12(b)(2) and 6, Fed.R.Civ.P. CNA argues that the policy referred to in the complaint was issued to Bekaert rather than Van Buren, and therefore that Ark.Stat.Ann. § 66–3240 does not apply so as to allow a direct action against it.

Evelyn McLane, guardian of the person and property of Fred McLane, moved to quash service because the summons was not signed by the clerk, bore no date, was not "sealed" by the court, directed McLane to answer within 20 days rather than 30, and additionally because the guardian and ward were not both served as required by law. McLane additionally asserts that the complaint fails to state a claim and is barred by the statute of limitations.

On March 27, 1985, Crawford County moved for summary judgment pursuant to

Rule 56, Fed.R.Civ.P., primarily on the grounds raised in its motion and answer.

Pillsbury moved to dismiss plaintiffs' complaint for an alleged failure to state a claim cognizable under law.

Shaw and Bracken moved to dismiss plaintiffs' complaint on the bases alleged in their answer.

Plaintiffs subsequently re-served McLane properly, and the adequacy and sufficiency of the original service are no longer before the court.

On May 3, 1985, the court advised the parties that the court had decided to consider the motions to dismiss filed by Crawford County, Van Buren, Pillsbury, McLane, and Shaw and Bracken, as motions for summary judgment. The parties were given ten days to supplement the record as necessary. All issues are now ripe for resolution and the motions of the various parties will be discussed in turn.

## II. The Motions of the City of Van Buren and Crawford County, Arkansas

It is undisputed that the complaint purports to allege a claim for relief based upon negligence against Van Buren and Crawford County. Ark.Stat.Ann. § 12–2901 provides:

> **12–2901. State subdivisions immune from tort liability.**—It is hereby declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the State shall be immune from liability for damages, and no tort action shall lie against any such political subdivision, on account of the acts of their agents and employees. [Acts 1969, No. 165, § 1, p. 455.]

Section 12–2902 allows political subdivisions to provide for the hearing and settling of tort claims against them, which Van Buren has done.

As noted, one of plaintiffs' arguments is that section 12–2901 is violative of section 1 of the fourteenth amendment, because section 12–2903 provides: "All political subdivisions shall carry liability insurance on all

their motor vehicles ..." but does not require political subdivisions to procure general liability insurance. As a result, potential plaintiffs have a remedy via the direct action statute, section 66–3240, for damages caused by the negligent operation of vehicles owned by political subdivisions, *see Sturdivant v. Farmington*, 255 Ark. 415, 500 S.W.2d 769 (1973), but have no remedy in tort for damages sustained as a result of other types of negligence on the part of political subdivisions.

Plaintiffs argue that sections 12–2901 *et seq.* violate the equal protection clause in the following particulars: (1) It classifies victims of negligence who have sustained damage by whether they have been injured by a non-government tortfeasor or a government tortfeasor; (2) It classifies victims of government tortfeasors by whether they have been injured by a motor vehicle or other instrumentality; (3) It classifies victims of government tortfeasors by whether they have been injured by a political subdivision that carries liability insurance or by one that does not do so; (4) It classifies victims of government tortfeasors by whether they have been injured by a political subdivision that has established a procedure for hearing and settling tort claims or by those that have not.

The potential unfairness of the legislative scheme is apparent. A citizen injured by a city's lawnmower is not necessarily entitled to compensation, although if that same citizen were instead to be struck by a city's motor vehicle, the citizen would be entitled to compensation under section 12–2903 and *Sturdivant.*

If a person is injured through the negligence of an employee of insured City A, that person's claim is compensable, while the claim of a person injured through the negligence of an employee of non-insured City B would not necessarily be compensable.

Obviously the legislative scheme allows some cities and counties to be held accountable for their wrongful acts while allowing other cities and counties to remain immune from accountability. This necessarily implies that some citizens of the state of Arkansas may receive compensation for injuries caused by city or county employees while some citizens are entitled to recover nothing, depending upon whether the political subdivision has in its sole discretion decided to purchase insurance, whether the victim was injured by a "motor vehicle," or whether the subdivision has "chosen" to implement a procedure for the handling of claims.

The issue of governmental immunity *per se* is not at issue. It is generally agreed that immunity of local governments was seminally recognized in *Russel v. Men of Devon*, 2 T.R. 667, 11 Eng.Rep. 359 (1788). This rule was first enunciated in Arkansas in *Granger v. Pulaski County*, 26 Ark. 37 (1870). This was the rule at common law theoretically carried forward in Arkansas by Ark.Stat.Ann. § 1–101. The only deviation from this principle, in the state of Arkansas, has been *Parish v. Pitts*, 244 Ark. 1239, 429 S.W.2d 45 (1963), which overruled the rule of the common law with respect to a *city's* tort immunity. In "response" to that decision the general assembly of the state of Arkansas enacted the legislative scheme now codified as Ark. Stat.Ann. §§ 12–2901—12–2903. This legislation restored the common law immunity of political subdivisions. *Williams v. Jefferson Hospital Ass'n, Inc.*, 246 Ark. 1231, 442 S.W.2d 243 (1969). It is also generally accepted that counties have *always* been immune from tort liability in Arkansas. *Chandler v. Pulaski County*, 247 Ark. 262, 445 S.W.2d 96 (1969).

The legislative scheme at issue has been upheld against a constitutional attack based upon Art. II, § 13, of the Constitution of the State of Arkansas, which purportedly grants to all persons a remedy for all injuries or wrongs received. *Emberson v. Buffington*, 228 Ark. 120, 306 S.W.2d 326 (1957). However, it has been held that Art. II, § 13, applies only to actions between *individuals. Hardin v. City of De-Valls Bluff*, 256 Ark. 480, 508 S.W.2d 559 (1974).

None of the recent cases upholding the legislative scheme, *see Matthews v. Martin,* 280 Ark. 345, 658 S.W.2d 374 (1983), have considered the argument presented herein by plaintiffs, based upon the equal protection clause of the fourteenth amendment.

Obviously a state *need* not subject any of its political subdivisions to suit in tort. However, once a state undertakes to alter the common law rule of immunity, its legislative actions must comport with the requirements of the fourteenth amendment.

It is clear that the legislative scheme at issue does create certain classifications of individuals. However, because the right to bring a tort suit is not a "fundamental" right, and because the legislative classifications do not establish "suspect" classes, the legislative scheme need only have an underlying "rational basis." The test is often stated as follows: (1) Does the challenged legislation have a legitimate purpose; and (2) was it reasonable for the lawmakers to believe that the use of the challenged classification would promote that purpose? *Western and Southern Life Ins. Co. v. St. Bd. of Equalization of Calif.,* 451 U.S. 648, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981).

Just as a state need not necessarily grant its citizens access to appellate review of court decisions, once a state undertakes to allow such access, the access may not be granted to some litigants and capriciously denied to others. *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972). Therefore, although a state need not grant its citizens access to a process for seeking compensation for tortious injury inflicted by its political subdivisions, once it undertakes to do so, it may not arbitrarily allow such access to some and not to others.

A state may legitimately attempt to limit its expenditures, whether for public assistance, public education, or any other program. But a state may not accomplish such a purpose by invidious distinctions between classes of its citizens. *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1968). The mere saving of public money is not a sufficient reason to draw an "invidious" distinction between classes. *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1973).

■ Were the legislative scheme at issue properly characterized as plaintiffs suggest, plaintiffs' argument would present a troubling constitutional question. However, the statutes do not simply render some political subdivisions liable in tort while arbitrarily exempting others from liability.

Counties have always been exempt from tort liability. *Hardin, supra.* The effect of Ark.Stat.Ann. § 12–2901 was to restore the tort immunity of cities that had been abolished by *Parish v. Pitts, supra,* and to reaffirm the tort immunity of school districts, special improvement districts, and all other political subdivisions. This statute, *per se,* poses no constitutional problem.

Ark.Stat.Ann. § 66–3240 simply authorizes an action against a liability insurance carrier of a political subdivision not ordinarily subject to suit. The court does not believe that the state's authorization of political subdivisions to procure liability insurance poses a cognizable constitutional issue as characterized by plaintiffs.

Similarly, Ark.Stat.Ann. § 12–2902 authorizes political subdivisions to hear and settle tort claims if they choose to do so. This authorization, like section 66–3240, serves a legitimate governmental purpose. Those subdivisions that choose to procure liability insurance or provide for the hearing and settling of tort claims provide some form of relief to the public and ameliorate the harshness of the rule of governmental immunity.

The state has but three alternatives with respect to subdivision immunity: (1) it can remain silent in which case the common law rule of immunity would ordinarily adhere; (2) it may *authorize* subdivisions to provide some form of relief, as Arkansas has done in sections 12–2902 and 66–3240; or (3) it may *require* political subdivisions to provide some compensation for tort victims, as Arkansas has done, in part, with

respect to motor vehicles in section 12–2903.

As a result of section 12–2903, political subdivisions who fail to comply with respect to their motor vehicles are deemed to be self-insured. *Sturdivant, supra.* Therefore, should the state *require* general liability insurance of its political subdivisions, as plaintiffs urge, it is possible that those who failed to comply would likewise be deemed to be self-insured. The result would, in effect, be a direct abrogation of "the public policy of the State of Arkansas that all ... political subdivisions shall be immune from liability for damages." Section 12–2901.

Thus, the legislative scheme is an ameliorative measure designed to provide a method and manner of relief to some victims of governmental tortfeasors. This is doubtlessly a legitimate governmental objective. The court also believes that it was reasonable for the legislature of the state of Arkansas to believe that the legislative scheme would accomplish its intended purpose, consistently with the "public policy of the State of Arkansas" as clearly expressed.

Classifications of this nature are to be set aside as unconstitutional only if based solely on reasons totally unrelated to attainment of the state's legitimate objective and only if no grounds can be conceived to justify them. *Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982).

It must be remembered that the Constitution does not forbid all that is evil nor command all that is good. Federal courts are not empowered by the fourteenth amendment to "re-write" clearly delineated public policy of the states in our federal system of government simply because we may believe some legislation to be unfair, unwise, or unpopular.

The court finds and concludes, therefore, that the City of Van Buren and Crawford County are immune from tort liability of the type alleged in the complaint by virtue of Ark.Stat.Ann. § 12–2901, and that the legislative scheme is not unconstitutional

under the equal protection clause of the fourteenth amendment.

Because the City of Van Buren is immune from the tort liability alleged, none of the other arguments or defenses raised by these parties need be discussed. The City of Van Buren is entitled to summary judgment as a matter of law.

For the same reasons, Crawford County is likewise entitled to summary judgment on plaintiffs' complaint.

### III. The Motions of Shaw, Bracken and McLane

■ Defendant McLane argues that plaintiffs' complaint fails to state a cognizable claim and that plaintiffs' action is also barred by the statute of limitations. The allegations in the complaint pertaining to McLane are essentially as follows: That in 1968 McLane and H.H. Meyer owned the property east of Lee Creek Road and to the north of the accident scene; that in 1968 McLane, Meyer and Pillsbury conveyed to Crawford County a right-of-way; that in 1975 McLane joined in a petition to annex the lands to Van Buren; that McLane was negligent in the dedication, acceptance, design, construction, maintenance, marking and guarding of Lee Creek Road, and in several other particulars based upon repeated and multiple "imputations" of negligence from the acts of other defendants (see ¶ 27, Complaint).

The court finds no basis in law for the "chain reaction" imputation of any acts of alleged negligence on the part of any of the other defendants to defendant McLane. *See Harris Construction Co., Inc. v. Powers,* 262 Ark. 96, 554 S.W.2d 332 (1977). Further, it is well-settled that after a property owner causes land to be dedicated to public use which is accepted, the property owner has no further obligation with respect to the land and indeed has no right to take action inconsistent with the public use. *Taylor v. Armstrong,* 24 Ark. 102 (1863).

Even if the court were to find all factual allegations of the complaint to be true, insofar as they refer to McLane, the court simply does not believe that a claim for

negligence has been pled. *See* AMI 301 (Civil); *Kubik v. Igleheart*, 280 Ark. 310, 657 S.W.2d 545 (1983); *First Electric Coop. Corp. v. Pinson*, 277 Ark. 424, 642 S.W.2d 301 (1982) (discussing "negligence," "proximate cause" and "foreseeability").

█ However, even if the allegations of the complaint could be construed as stating a cognizable claim against McLane, such a claim would clearly be barred by the applicable statute of limitations, Ark.Stat.Ann. § 37–206. The most recent "act" of which plaintiffs allege McLane was "guilty" occurred in 1975, with his initial actions occurring in 1968. Plaintiffs' "claim" against McLane is clearly barred by the statute of limitations, even if the complaint had stated a cause of action against McLane, which it has not.

Defendant McLane is entitled to summary judgment on plaintiffs' complaint. For the same reasons, defendants Shaw and Bracken, as co-executors of the estate of H.H. Meyer, are also entitled to summary judgment on plaintiffs' complaint.

#### IV. The Motion of CNA

The allegations of plaintiffs' complaint with respect to CNA are that CNA "is the liability insurance carrier for Defendant Bekaert Steel Wire Corporation and Defendant City of Van Buren, Arkansas, under an agreement between (Bekaert) and (Van Buren)" (¶ 8, Complaint). The complaint further recites that Bekaert entered into a sale agreement with Van Buren requiring Van Buren to issue "Act 9 Bonds" to raise money to construct Bekaert's plant, and requiring Bekaert to maintain general public liability insurance and property damage insurance. Article X, § 1001, of the agreement requires Bekaert to indemnify Van Buren against claims brought in connection with the plant (¶ 23, Complaint). Plaintiffs additionally contend that the policy was issued by CNA to Bekaert, covering claims occurring on or about the plant which, by definition, includes Lee Creek Road at the point of the accident. Therefore, plaintiffs state that they are "third-party beneficiaries" and Van Buren is an "insured," and, thus, CNA is subject

to "direct action" suit (¶ 25, Complaint). Plaintiff cites no authority for this proposition.

The "direct action" statute, upon which plaintiffs rely, provides:

**66–3240. Liability insurer may be sued direct where insured not subject to suit for tort.**—When liability insurance is carried by any cooperative nonprofit corporation, association or organization or by any municipality, agency or subdivision of a municipality or of the State or by any improvement district, school district, or by any other organization or association of any kind or character, not subject to suit for tort, and any person, firm or corporation suffers injury or damage to person or property on account of the negligence or wrongful conduct of any such organization, association, municipality or subdivision, its servants, agents or employees acting within the scope of their employment or agency, then such person, firm or corporation so injured or damaged shall have a direct cause of action against the insurer with which such liability insurance is carried to the extent of the amount or amounts provided for in the insurance policy as would ordinarily be paid under the terms of the policy, and such insurer shall be directly liable to such injured person, firm or corporation for such damages to the extent of such coverage in such liability insurance policy, and the plaintiff or plaintiffs may proceed directly against the insurer regardless of the fact that the actual tortfeasor may not be sued under the laws of the state. [Acts 1959, No. 148, § 307, p. 418.]

It has been held that direct action statutes do not apply to insurance policies carried by private individuals even in cases wherein the political subdivision may have been liable in tort were it not for their immunity. *Savage v. Spicer*, 235 Ark. 946, 362 S.W.2d 668 (1962). Comparable former law, Ark.Stat.Ann. § 66–517 (repealed) applied only to insurance companies issuing policies *to* enumerated immune organizations. The purpose of that law was clear

that the legislative intent was not to extend the statute to allow a direct action against the insurer of an individual. *Savage, supra.*

■ The current statute applies only "when liability insurance is *carried by* ... any (political subdivision) not subject to suit for tort...." Section 66–3240. The policy involved in this case was "carried" by Bekaert, not Van Buren, and Bekaert does not qualify as an "association of any kind or character, not subject to suit for tort."

Plaintiffs' theory is attractive, however, the statute upon which they rely has never been broadly construed. *See Hamilton v. Covington,* 445 F.Supp. 195 (W.D.Ark. 1978). Again, the court reiterates that federal courts should not attempt to "rewrite" state legislation without a clear indication that such would comply with the intent of the state legislative body, whose purpose is, after all, to declare and implement the public policy of the state.

The court does not believe that plaintiffs' argument would be accepted by the state courts, nor does it believe that the legislature intended the extended interpretation urged. Accordingly, the court concludes that section 66–3240 is inapplicable. There being no other asserted basis for a "direct action" against CNA, CNA is entitled to summary judgment on plaintiffs' complaint.

## V. The Motion of Pillsbury

The allegations of the complaint with respect to Pillsbury are essentially that in 1968 H.H. Meyer and McLane owned the property east of the center line of what is now Lee Creek Road, and Pillsbury owned the property west of the center line of what is now Lee Creek Road. In April, 1968, Meyer, McLane and Pillsbury conveyed an 80-foot "right-of-way" to Crawford County, that right-of-way now being Lee Creek Road. In May, 1968, Crawford County accepted the easement for use as a public road. In June, 1974, Pillsbury conveyed the property west of Lee Creek Road to Bekaert.

It could not be seriously argued that any duty by Pillsbury to warn anyone of a potentially hazardous condition of the Lee Creek Road property would have extended beyond May, 1968, when Lee Creek Road was established as a county road, to be maintained thereafter by Crawford County. After that date, Pillsbury had no *authority* to perform any of the tasks alleged, the omissions of which constitute the basis of plaintiffs' claim against Pillsbury.

Any negligent acts or omissions by Pillsbury occurring prior to May, 1968, with respect to Lee Creek Road would long be time-barred by Ark.Stat.Ann. § 37–206. Any negligent acts or omissions with respect to the property west of Lee Creek Road would similarly be precluded, as Pillsbury's interest in that property expired in June, 1974. Suffice it to say that Pillsbury is entitled to summary judgment on plaintiffs' complaint.

## VI. The Amendment to Plaintiffs' Complaint And Plaintiffs' Other Arguments

On July 31, 1985, this court granted plaintiffs leave to amend their complaint. The amended complaint adds United States Trust Company of New York, Trustee, as a party defendant. As the case progressed it appeared that defendant McLane divested his ownership of the lands described in the right of way deed (see Exhibit "A" to Complaint) by a sale to United States Trust Company of New York, Trustee, without excepting the fee underlying the road, on June 26, 1979.

Subsequent to the filing of the amended complaint, the court notified the parties that, unless otherwise instructed, all prior motions, briefs and exhibits would be deemed realleged and resubmitted, and that the court would continue to view all pending motions to dismiss as motions for summary judgment. The parties were given sufficient time to supplement the record as they chose. All requested materials have now been submitted.

■ Plaintiffs argue, in opposition to the various motions for summary judgment, that certain of the lands at issue have been

"abandoned" by the governmental entities, "re-establishing" any duty owed by abutting or prior landowners. Lee Creek Road was established as a county road by order of the Crawford County Court in May, 1968. Because the road was not established by prescription or "use," the procedure for vacation or abandonment of it is governed by Ark.Stat.Ann. § 76–918. That statute provides:

**76–918. Vacation of road—Procedure-Costs.**

When any county road, or any part of any county road, shall be considered useless, any ten [10] citizens residing in that portion of the county may make application by petition agreeable to the preceding section [§ 76–916] of this act to the county court to vacate the same, setting forth in the petition the reason why the same ought to be vacated, which petition shall be publicly read at a regular session of the county court, with the proof of notice and publication required by this act; and no further proceedings shall be had thereon until the next regular session of the court. If no objections be made and filed, the county court may declare said road vacated, or any part thereof that it may deem necessary. If objection be made in writing, the county court shall appoint three [3] viewers to view said road, who shall proceed, after taking the oath or affirmation required by this act, to view the road as aforesaid, and make written report of their opinion thereon, and their reason for the same, to the county court. If said viewers shall report in favor of vacating such road, or any part thereof, the court may, if it deems the same reasonable and just, declare said road, or any part thereof, vacated, agreeable to the report of the viewers. The costs thereof and expenses incident thereto shall be paid by the petitioners, unless the county court shall order the same paid out of the county treasury. [Act Mar. 23, 1871, No. 26 § 58, p. 56; C. & M. Dig., § 5247; Pope's Dig., § 6966.]

There is nothing in the record to indicate that this procedure was utilized. There are several cases which indicate that a street or road vacated *by ordinance* or established by *use* or *prescription,* may revert by abandonment or non-use to the preceding landowners upon petition of a proper party. However, this is only the case where the road is established by limitation or prescription. *McLain v. Keel,* 135 Ark. 496, 205 S.W. 894 (1918); *Lovegrove v. Hanna,* 239 Ark. 44, 386 S.W.2d 947 (1965). Although such a distinction was not drawn in *Wallace v. Toliver,* 265 Ark. 816, 580 S.W.2d 939 (1979), the court believes the statutory scheme set forth above supplies, implicitly, the different treatment accorded county roads established by court order. Even if such a distinction in the law is not to be drawn, however, plaintiffs' complaint itself states "Lee Creek Road south of Interstate 40 is a paved roadway with center line markings which appears to be a regularly-traveled, through highway" (¶ 16, Amended Complaint), rather than an abandoned, non-used road with gaps or gates. It would be anomalous for the court to hold that actions based upon negligence of landowners *qua* landowners are ordinarily barred after three years subsequent to conveyance thereof via the statute of limitations, as appears to be the case, and then hold that responsibility for the land involuntarily and without notice reverts to the abutting or preceding landowners any number of years later by some extralegal "leap of fiction" simply because of an alleged *de facto* "abandonment" and non-use of a road for a continuous period of seven years, which road nonetheless appears to be a marked, well-paved, "regularly-traveled, through highway."

Nor does the court believe that any non-use or "abandonment" of the road has been documented sufficiently to meet the requirements of Rule 56(e), Fed.R.Civ.P. Even if Lee Creek Road was, at some point in time, the responsibility of Van Buren, any "abandonment" by it to Crawford County, or vice versa, would not inure to plaintiffs' benefit, as both are immune from tort liability.

The court is further unable to accept the theory that the road became a city street by virtue of an alleged non-use or abandonment by the county or by the annexation of the land by Van Buren. *See generally* Ark.Stat.Ann. §§ 19–301, 19–3801, 19–2304, and 19–3825—19–3830. Thus, neither Van Buren nor Crawford County can involuntarily "shift" responsibility to prior or abutting landowners without notice or consent by virtue of some form of quasi-indifference to the road. Counsel for McLane terms plaintiffs' theory in this regard "extralegal osmosis." The court agrees.

In accordance with the foregoing, the court finds that the motions for summary judgment of defendants Crawford County, Van Buren, CNA, Pillsbury, McLane, Shaw and Bracken should be granted and plaintiffs' amended complaint should be dismissed as to these parties.

A separate order in accordance herewith will be concurrently entered.