Mr. Jack DuBose, Acting Director Office of Emergency Services P.O. Box 758 Conway, AR 72032
Dear Mr. DuBose:
This is in response to your request, on behalf of local emergency services coordinators, for an opinion concerning liability for damages and injuries incurred at disaster shelters. Your questions have been paraphrased as follows:
 1. If the County (Judge, Emergency Services Coordinator, or other official) requests that a shelter be opened, who is liable, both before and after the Red Cross takes control of the shelter operations, for damages to the facility, for injuries to sheltered persons, and for injuries to volunteer workers, if the workers are not covered under the county worker's compensation plan?
 2. Would the "Good Samaritan Act" of 1963 protect facility owners and shelter workers from liability?
 3. Does county or city government have the authority to issue a waiver of liability to facility owners, and would it completely exempt facility owners from liability in the event of a sheltered person or worker being injured?
As an initial matter, it must be noted that each of your questions involves issues of fact which preclude my offering a conclusive response in the context of an Attorney General's Opinion. It is my opinion, rather, that answers to your questions will depend on the particular facts in each individual situation. This being the case, I will address your questions in general terms, setting out relevant laws, but cannot make any definitive conclusions about liability in any specific instance. The purpose of this opinion is therefore only to acquaint you with the relevant laws on the topic. Should you have questions with reference to specific fact situations, they should be referred to the attorney for your agency.
You have not indicated, with regard to your first question, the intended focus of your inquiry (e.g., whether the damages or injuries are the result of a natural disaster, a negligent or intentional act of an emergency services worker, a volunteer, a sheltered person, the facility owner or another person, or from some other cause.) I am therefore without sufficient information to offer a conclusive response. As a general matter, however, A.C.A. § 21-9-301 (Cum. Supp. 1991) provides that all counties, municipal corporations, and other political subdivisions of the state shall be immune from liability for damages, except to the extent that they may be covered by liability insurance. Seealso Act 292 of 1993, § 2. The General Assembly has provided that no tort action shall lie against any such political subdivision because of the acts of its agents and employees. It has been recognized that counties have always enjoyed tort immunity (see Hardin v. City of DeValls Bluff, 256 Ark. 480,508 S.W.2d 559 (1974) and Lacey, et al. v. Bekart Steel WireCorporation, 619 F.Supp. 1234 (W.D. Ark. 1985), aff'd,799 F.2d 434 (8th Cir. 1986)) and in recent cases, specific officers have been held immune under this act as well for their non-intentional torts. See Matthews v. Martin, 280 Ark. 345,658 S.W.2d 374 (1983) and Autry v. Lawrence, 286 Ark. 501,696 S.W.2d 315 (1985). Accordingly, these immunity provisions would generally protect the county from liability exposure for damages for an action based in tort. See also Op. Att'y Gen.90-100.[1]
To the extent that the situation involves a state officer or employee, and the action complained of is within the course and scope of the officer's or employee's employment, A.C.A. §19-10-305 (Cum. Supp. 1991) will provide immunity. This statute provides that officers and employees of the state are immune from civil liability for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment. It should be noted, however, that this provision has been interpreted to mean that state officers and employees are immune to the extent there exists no liability insurance covering their actions. Bly v. Young, 293 Ark. 36, 732 S.W.2d 157
(1987). See also Act 292 of 1993, § 1.
Emergency service workers are similarly immune from liability for certain actions in the performance of their duties under the Arkansas Emergency Services Act (codified at A.C.A. §§12-75-101—130 (1987 Cum. Supp. 1991)). Section 12-75-128 of this act provides in pertinent part as follows:
 (b) No emergency services worker, except in cases of willful misconduct, gross negligence, or bad faith, when complying with or reasonably attempting to comply with this chapter, or any other rule or regulation promulgated pursuant to the provisions of this section or pursuant to any ordinance relating to blackout or other precautionary measures enacted by any political subdivision of the state, shall be liable for the death of or injury to persons, or for damage to property, as a result of any such activity.
 (c) The foregoing immunity shall extend to both emergency services workers who are employees and to qualified emergency services workers who are volunteers.
The Arkansas Volunteer Immunity Act may provide immunity from liability in certain situations as well. This act, codified at A.C.A. §§ 16-6-101—105 (Cum. Supp. 1991), provides that those who qualify as "volunteers" under subsection 16-6-103 may not be held vicariously liable for the negligence of another in connection with or as a consequence of his or her volunteer activities.See A.C.A. § 16-6-104(a). The immunity extends to damages for personal injury or property damage "sustained by one who is a participant in, or a recipient, consumer, or user of, the services or benefits of a volunteer by reason of any act or omission of a qualified volunteer." A.C.A. § 16-6-105. See,
however, A.C.A. §§ 16-6-105(1)-(4) for specific exceptions to this nonliability provision. Similarly, this grant of immunity is not extended to acts outside the scope of the volunteer program, and the liability of the volunteer agency itself is not limited by the act. See A.C.A. § 16-6-104(b) (c).
Arkansas Code Annotated §§ 16-120-101—104 (Cum. Supp. 1991) also provides immunity from tort liability in certain situations for directors of nonprofit corporations. See generally A.C.A. §§16-120-102—103.
Finally, reference should also be made to A.C.A. § 12-75-129 with regard to that part of your inquiry which focuses on workers' compensation benefits of emergency services workers.
In sum, the applicability of the immunity or the exceptions thereto of any of the above cited statutes will depend upon the particular facts and circumstances of each case. Accordingly, yours is a factual question to be addressed on a case-by-case basis.
It is my opinion that the answer to your second question will also depend upon the particular facts and circumstances of each particular instance.
As a general matter, the "Good Samaritan" law is codified at A.C.A. § 17-93-101 (Repl. 1992). The immunity from civil liability granted under the act extends to any person ". . . who, in good faith, lends emergency care or assistance without compensation at the place of an emergency or accident. . . ." A.C.A. § 17-93-101(a). The applicability of this act in the context of damages or injuries incurred at emergency shelters will depend upon the particular facts and circumstances in each instance. While there appear to be no cases directly on point in this regard, it should be noted that the grant of immunity does not apply in the event of an act or omission constituting gross negligence. A.C.A. § 17-93-101(c). This, too, is a factual question to be addressed on a case-by-case basis.
You have not indicated, with regard to your third question, what is meant by a "facility owner." If you are referring to persons who donate the use of their property, pursuant to the Arkansas Emergency Services Act, supra, for a shelter during times of emergencies, it is my opinion that reference should be made to A.C.A. § 12-75-125 (1987), which states in pertinent part that:
 Any person owning or controlling real estate or other premises who voluntarily and with or without compensation grants a license or privilege, or otherwise permits the designation or use of the whole or any part or parts of such real estate or premises for the purpose of sheltering persons during an actual, impending, mock, or practice attack shall, together with his successors in interest, if any, not be civilly liable for negligently causing the death of, or injury to, any person on or about such real estate or premises for loss of or damage to the property of such person. . . .
This provision addresses your question with regard to the types of emergencies listed therein. It would, accordingly, necessitate no need for a waiver of liability from the governmental entity to the "facility owner" for those acts which come within the statutory grant of immunity (i.e., acts occurring during an "actual, impending, mock, or practice attack. . . .") This question, accordingly, also involves issues of fact which will require a determination on a case-by-case basis.[2]
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Sherry L. Daves.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] The potential for liability under federal law, must, however, also be considered. If a plaintiff could conceive of a viable federal legislative or constitutional claim based upon the facts you have presented, only qualified immunity would exist for individual officers involved, and the actual political subdivisions would not be immune from suit. See generally,Anderson v. Creighton, 483 U.S. 635 (1987), (stating that the test of qualified immunity for individual officers turns upon the "objective legal reasonableness of the action" assessed in light of the legal rules that were "clearly established" at the time it was taken.) While I do not have enough facts to ascertain whether such a claim potentially exists, the possibility should certainly be addressed by the county's regular legal counsel.
[2] See also A.C.A. § 12-75-124(d), which allows property owners to submit claims to the State Claims Commission for compensation for the use, damage, loss, or destruction of property under the Arkansas Emergency Services Act.