HELEN STURDIVANT, ADM'X *v.* CITY OF FARMINGTON, ARK.

73-137                                   500 S.W. 2d 769

Opinion delivered November 5, 1973

*Jones & Segers,* for appellant.

*James E. Evans Sr.,* for appellee.

LYLE BROWN, Justice. This suit in tort was brought by appellant against appellee, City of Farmington. It arose out of a fatal collision between the city marshal of Farmington and appellant's intestate, a minor. The city's demurrer to the complaint was sustained on the ground that municipalities are immune from tort action. Act 165, 1969; Ark. Stat. Ann. § 12-2901 (Supp. 1971). On appeal it is asserted that the recited act makes it mandatory that the State's political subdivisions carry liability insurance and that failure to do so makes the city amenable to a tort action.

In *Parish* v. *Pitts,* 244 Ark. 1239, 429 S.W. 2d 45 (1968), we set aside the rule of law established by precedent which granted immunity to municipalities from tort liability. The first session of the General Assembly thereafter, referring specifically to *Parish* v. *Pitts,* enacted Act 165 (Ark. Stat. Ann. § 12-2901—03) (Supp. 1971):

Sec. 1. It is hereby declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the State shall be immune from liability for damages, and no tort action shall lie against any such political subdivision, on account of the acts of their agents and employees.

Sec. 2. Each county, municipal corporation, school district, special improvement district, or other political subdivisions of the State is hereby authorized to provide for hearing and settling tort claims against it.

Sec. 3. All political subdivisions shall carry liability insurance on all their motor vehicles in the minimum amounts prescribed in the Motor Vehicle Safety Responsibility Act (Ark. Stat., § 75-1402 et seq.; Act 347 of 1953, as amended).

Sec. 4. It is hereby found and determined by the General Assembly that because of the decision of the Arkansas Supreme Court in *Parish* v. *Pitts,* 244 Ark. 1239, municipalities and all units of local government are in imminent danger of bankruptcy because of tort lawsuits and vital public services are in danger of being discontinued. Therefore, an emergency is hereby declared to exist and this Act being immediately necessary to protect the public peace, health and safety, shall take effect immediately on its passage and approval.

We have had at least three cases in which we have discussed Act 165. *Sullivan* v. *Pulaski County,* 247 Ark. 259, 445 S.W. 2d 94 (1969); *Chandler* v. *Pulaski County,* 247 Ark. 262, 445 S.W. 2d 96 (1969); *Williams* v. *Jefferson Hospital Ass'n.,* 246 Ark. 1231, 442 S.W. 2d 243 (1969). In those cases we did not discuss the precise question now before us, namely, that the failure to carry liability insurance makes the political subdivision amenable to a tort action.

The preamble to Act 165 states one of the purposes of the act to be "to require all political subdivisions to carry liability insurance on their motor vehicles". Then Section 3 says "they *shall* carry liability insurance on all their motor vehicles". We think it was the intent of the General Assembly to require such liability insurance.

Two of the fundamental purposes of Act 165 are (1) to set aside *Parish* v. *Pitts,* supra, and (2) to make it possible for persons injured by municipally owned vehicles to have redress for negligence. If we hold that the city of Farmington is entitled to the immunity afforded it under Act 165 and at the same time hold that it is not mandatory that it comply with the liability insurance provision thereof, then we have destroyed the second purpose of the act above enumerated. The mandatory provision for carrying liability insurance is so strongly and clearly stated that we cannot agree to such emasculation. We think, and so hold, that any city which fails to conform to the insurance requirement places itself in the posture of being responsible, as would a self-insurer, in case it is found to be liable, in an amount not to exceed

the minimum amount prescribed in the Motor Vehicle Safety Responsibility Act. See Ark. Stat. Ann. § 75-1466 (Supp. 1971). We think it reasonable to conclude that the legislature intended that the public be protected to the extent of the recited limits. That may be done in only one of two ways, namely, insurance or self-insurance. Our interpretation avoids opportunities to evade the act. An interpretation which defeats evasion is favored in the law. 50 Am. Jur., Statutes, § 361. Then in *Woodruff* v. *State,* 3 Ark. 285 (1840), it was said: "And such construction ought to be put upon it, [the act] as will not suffer it to be eluded". And in Sutherland, Statutory Construction (4th Ed.) Vol. 2A, § 57.01 we find this significant statement: "No statutory provisions are intended by the legislature to be disregarded; but where the consequences of not obeying them in every particular are not prescribed, the courts must judicially determine them. In doing so they must necessarily consider the importance of the literal and punctilious observance of the provision in question to the object the legislation is calculated to serve."

Reversed and Remanded.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I cannot agree with the court's construction of the act, and I would affirm the judgment. Had the legislature said, or indicated any intent whatever to say, what the court says today I would be bound to agree. I feel the court has again acted legislatively in the municipal immunity field. I need not dwell on my differences with the majority in *Parish* v. *Pitts,* 244 Ark. 1239, 429 S.W. 2d 45, however, because my position in that case leads directly to a construction of the statute, which is the same approach as that taken by the majority.

Previous decisions mentioning Act 165 of 1969, the General Assembly's reaction to *Parish* v. *Pitts,* are not directly in point, because the decision in *Parish* v. *Pitts* had no direct bearing upon tort liability of either counties or charitable institutions. The court's remarks about the act are pertinent, however.

In *Sullivan* v. *Pulaski County*, 247 Ark. 259, 445 S.W. 2d 94, we deemed the action of the General Assembly sufficient reason why a suitor in tort against the county could not prevail, calling attention to Act 165. There we said:

> This statement of public policy is plain and unambiguous, and leaves no room for doubt.

In *Chandler* v. *Pulaski County*, 247 Ark. 262, 445 S.W. 2d 96, decided the same day, we said that the reasoning in *Sullivan* applied. Then we recited the reasoning:

> There, we point out that the General Assembly of 1969 enacted legislation which became Act 165, the legislation declaring the public policy of the State of Arkansas to be "that all counties, municipal corporations, school districts, and all other political subdivisions of the State shall be immune from liability for damages, and no tort action shall lie against any such political subdivision, on account of the acts of their agents and employees."

To the same effect, see *Reeme and Rhodes* v. *Natural Gas. Imp. Dist.*, 247 Ark. 983, 448 S.W. 2d 647. In *Williams* v. *Jefferson Hospital Association*, 246 Ark. 1231, 442 S.W. 2d 243, in rejecting a plea that we abandon the doctrine of charitable immunity, we said:

> There is another reason why the *Parish* case is not controlling. The Legislature acted within less than one year after Parish v. Pitts. By Act 165 of 1969 that holding was overturned. That Act declares the public policy to be that all political subdivisions of the State be immune from tort liability. The Act does require all such subdivisions to acquire public liability insurance on their vehicles. It is further provided that such governmental units may hear and settle tort claims against them. It can well be argued that this expression of legislative intent to retain governmental immunity would bring forward a similar expression in the field of charitable immunity if this court abrogated the latter rule.

True it is, we were dealing with immunities of agencies other than municipalities. It is also true that the requirement of automobile liability insurance had no application in any of these cases. It is significant that in none did we find any qualifying "ifs," "ands" or "buts" in the statute. This is attributable to the fact that there are none, or were not until the court imported them today. It is also significant to me that the language quoted from *Williams* is consistent with my construction of the act. That language indicates the appropriate procedure in tort claims against municipal corporations.

The language of Section 1 of the act says without qualification that "no tort action shall lie against any such political subdivision, on account of the acts of their agents and employees." This is a positive and unequivocal statement and there is no language qualifying or restricting this language anywhere in the act, even if we could consider the act itself ambiguous, and look to the title and emergency clause. Section 3 definitely does not limit, qualify or restrict this positive prohibition. We have said that this statement of public policy is unambiguous. If so, no resort to the title or the emergency clause is proper. But if it is ambiguous enough to permit this, certainly nothing can be found to mandate the construction given the act by the majority in either. The emergency clause is in the majority opinion. The title reads:

> AN ACT to Declare It to Be the Public Policy of the State of Arkansas That the State and Its Political Subdivisions Shall Not Be Liable for Tort Under the Laws of the State of Arkansas and to Provide That No Action Shall Be Maintained Therefor; to Require All Political Subdivisions to Carry Liability Insurance On Their Motor Vehicles; to Declare An Emergency; and for Other Purposes.

The patent effect of the majority opinion is to create a cause of action, otherwise nonexistent, by reason of the nonfeasance of municipal officers, something heretofore unheard of in Arkansas. It was clearly and unequivocally held in *City of Little Rock* v. *Holland,* 184 Ark. 381,

42 S.W. 2d 383 (aside from and independent of the holding that a municipality is not liable for the negligence of its officers and agents in the performance of its governmental functions), that it is well settled that a municipality is not liable for the nonfeasance of its officers and agents. We quoted extensively from *Collier* v. *Ft. Smith,* 73 Ark. 447, 84 S.W. 480, 68 L.R.A. 237, as follows:

> There is no necessary conflict between the earlier case holding the city liable for misfeasance of its officers and servants, and the two later cases, holding that cities and towns are not liable for nonfeasance. This distinction is not without reason, for, in the absence of a statute expressly imposing liability to individuals for nonperformance of a duty to the public, none will be implied, though liability might be implied from the commission of a positive wrong, whereby an individual might suffer injury. Nor is this distinction without high authority to support it * * *.

Resort to 18 McQuillin (Third Edition Revised) reveals the following rules:

> A municipality can be compelled through its officers to comply with the law, but because of failure or refusal in this respect no obligation or penalty not provided by law is thereby imposed upon the municipal corporation. (p. 128, § 53.08)

> The act of entering into an insurance contract on the part of the municipality is a governmental act, for neglect of which a city is not liable in tort. (p. 190, § 53.28)

In construing Act 46 of 1947, which permitted, but did not require, municipal corporations to carry liability insurance, and in holding that the insurer could not assert the municipality's immunity from suit as a defense in a direct action on the policy, we relied upon the comments of that eminent Arkansas legal scholar, Dr. Robert A. Leflar, 1 Ark. L. Rev. 215. See *Aetna Casualty & Surety Co. of Hartford, Conn.* v. *Brashears,* 226 Ark. 1017, 297 S.W. 2d 662. Among other things, Dr. Leflar said:

It has generally been agreed that the State can by statute permit its lesser agencies to be sued either in tort or contract, though such permission has not generally been given in Arkansas. Act 46 may be deemed a sort of indirect permission, whereby the agency is allowed to contract for such suits to be brought, not against itself, but against its contractual representative who is indemnified by premiums paid to the representative by the agency. As to contracts hereafter made, it is possible that this device may be held to be effectual to give a cause of action to injured persons.

I submit that Section 3 of Act 165 of 1969, by which the carrying of automobile liability insurance by municipalities was made mandatory rather than optional, had exactly the same effect and none other, i.e., it directed the insured city to contract for such suits to be brought against the city's insurer who is indemnified by the payment of premiums. The mere change from a permission to carry insurance to a direction to do so certainly should not be construed to create an exception from a clearly and positively declared immunity from suit. The result reached by the majority actually reads into the statute either an exception to the immunity stated or granted (depending upon one's point of view) or an implied limited waiver of immunity from suit by the failure of municipal officers to acquire the required policies.[1] I insist that there is no indication that the legislature so intended, or that it intended that a liability be imposed by nonfeasance of municipal officials.

This situation is not unprecedented. In *Knauer v. Ventnor City*, 13 N.J. Misc. 864, 181 A. 895 (1935), an effort was made to recover on behalf of a policeman the amount of a judgment against him on a cause of action arising out of his negligent operation of a police car while in pursuit of his duties. Liability was based upon a statutory provision similar to that before us. It provided that "[e]very political subdivision in this State shall cause to be insured the drivers of its motor cars * * * against liability for damages resulting in personal injury or

---

[1]Municipal officers cannot waive or relinquish the rights of the municipality in the absence of express authority. 3 McQuillin, Municipal Corporations (Third Edition Revised) 524, § 12.126.

death or damage to property caused by reason of the operation and use of such motor cars * * * . Said insurance may be issued in the name of the political subdivision, but it shall insure the authorized drivers * * * against liability for damages to property, in any one accident, to an extent of not less than one thousand dollars and against liability for injuries or death of one person in any one accident to an extent of five thousand dollars, and against liability for injury or death of more than one person, in any one accident, of not less than ten thousand dollars."

The New Jersey court said:

The Legislature manifestly deemed it expedient to establish in the governmental affairs of such municipalities an administrative policy which would afford the drivers of municipally-owned vehicles the designated protection by insurance against the stated liability. The adoption of such a policy was not intended solely for the benefit of the certain individuals who were to be protected by the insurance. It was undoubtedly determined that the adoption of such a policy would be in the public interest. Recognizing, for example, that the drivers of the fire and police department vehicles were rendering a public service and in the performance of such service might incur liability for injuries to others, it was undoubtedly considered to be in the public interest to afford not only protection to such drivers against liability, but also to provide a means by which such liability might be discharged. The Legislature committed the accomplishment of this protective measure to the governing bodies of the municipalities, but did not prescribe any penalty for the failure of the municipal officials to comply with the directions of the statute, and did not impose any liability on a municipality in the event that any such driver suffered loss in consequence of the failure of the municipal officials to comply with the terms of the statute. Assuming that the duty of the governing body of the city to insure the drivers of its vehicles was mandatory, it was nevertheless a duty of a governmental character. The neglect or failure of the governing officials to

obey the mandate of the statute does not of itself create a cause of action maintainable against the municipality in behalf of one who was detrimentally circumstanced by the dereliction of the governing officials.

In this action the alleged liability of the city is predicated solely upon the failure and neglect of the city council to perform a governmental duty. No such action is maintainable unless afforded by statute. It is appropriately the function of the Legislature to authorize the prosecution of a civil action against a municipality by an individual who has suffered injury in consequence of the neglect of the municipal officials to perform a public and governmental duty, if the creation of such a cause of action is deemed proper and expedient. The obligation of the municipality to perform the governmental duty may be imposed by statute, but the doctrine still prevails that the neglect of a municipal corporation to perform, or its negligence in the performance of, a public duty imposed on it by law, is a public wrong and cannot constitute the basis of a civil action by an individual who has suffered particular damage by reason of such neglect.

In a later case, *Osback* v. *Lyndhurst Tp.*, 7 N.J. 371, 81 A. 2d 721 (1951), the New Jersey Supreme Court rejected a similar claim in which it was urged that a liability should be imposed upon the city because the lower court decision on the basis of *Knauer* effectively took away the benefit of the statute from the two classes of people upon whom it was intended to be conferred. The court, relying upon the well-established rule that an action will not lie in behalf of an individual who has sustained a special damage by reason of the neglect of a public corporation, or its agents, to perform a public duty, said:

The statute, however, while stating the requirement of public liability insurance in mandatory language, does not provide a remedy for those who may suffer through a failure to comply with its terms. If it had done so, the right to recover would be clear.

The underlying principle followed in these cases has been recognized in Arkansas. In *Gregg* v. *Hatcher,* 94 Ark. 54, 125 S.W. 1007, 27 L.R.A. (n.s.) 138, we quoted, with approval, from 20 American and English Encyclopedia of Law (Second Edition), pp. 1193 and 1194. That quotation included the following language:

> So far as municipal corporations exercise powers conferred on them for purposes essentially public, they stand as does sovereignty whose agents they are, and are not liable to be sued for any act or omission occurring while in the exercise of such powers, unless by some statute the right of action is given; and where, the particular enterprise is purely a matter of public service for the general and common good, it makes no difference whether it is mandatory, or whether only permitted and voluntarily undertaken.

Without further elaboration, I feel the result reached is inappropriate only because of the means and agency through which it is reached. Not only would I have no quarrel with that result had it been reached by the General Assembly, I would agree that it was desirable. If the General Assembly had intended that result it could have said so in a few simple words. We must presume that the legislature knew that nonfeasance of municipal officers does not give rise to a cause of action against the municipality. If the effect of this decision were limited to this particular act, perhaps I should not protest so strongly. As a precedent it can be very far-reaching, and can be the vehicle for many quasi-legislative actions by this court under the guise of statutory construction.

I must add that there is an additional reason why I would affirm the action of the trial court. Failure of the municipal officers to procure the required liability insurance does not mean that Section 2 of the act may not be invoked. Section 2 is clearly applicable to all tort claims, even those arising out of operation of motor vehicles and particularly those which might be for an excess over the limits of automobile liability insurance. There is nothing in the complaint to indicate that appellant had sought to invoke procedures under that section or that the city had not established them.