CITY OF LITTLE ROCK *v.* Virginia WEBER

88-100                                          767 S.W.2d 529

Supreme Court of Arkansas
Opinion delivered April 10, 1989

*Mark Stodola*, City Attorney, by: *Victra L. Fewell*, Asst. City Att'y, for appellant.

*Perroni, Rauls & Looney, P.A.,* by: *Rita S. Looney*, for appellee.

DAVID N. LASER, Special Justice. Appellee Virginia Weber sued the City of Little Rock, appellant, for damages she sustained when a Little Rock policeman, driving a city patrol car with blue lights and siren engaged, entered an intersection against a red light and struck her vehicle. The city moved for summary judgment on the basis of governmental immunity, which was denied by the trial court. The case proceeded to trial, resulting in

a jury verdict for Weber in the amount of $4,750.00. The city lodged its appeal, contending that a municipality is absolutely immune from tort liability arising out of a city policeman's negligent operation of an authorized emergency vehicle. The city also argues on appeal that the trial court erroneously instructed the jury on the standard of care applicable to the operation of an emergency vehicle. We affirm.

In response to a decision of this court setting aside the common law immunity of municipalities, *Parish* v. *Pitts*, 244 Ark. 1239, 429 S.W.2d 45 (1968), the Arkansas Legislature passed Act 165 of 1969 restoring governmental immunity. That Act, however, also included the following provision:

> All political subdivisions shall carry liability insurance on all their motor vehicles in the minimum amounts pre-scribed in the Motor Vehicle Safety Responsibility Act. . . .

Ark. Code Ann. § 21-9-303 (1987).

This statute was first interpreted in *Sturdivant* v. *City of Farmington*, 255 Ark. 415, 500 S.W.2d 769 (1973), a case arising out of a fatal collision between the city marshal of Farmington and plaintiff's intestate. *Sturdivant* held that the purpose of § 21-9-303 was to provide the public with a remedy against cities when injured by municipally owned vehicles. That purpose would be defeated unless the city, either through insur-ance or self-insurance, were liable to the extent of the stated limits. This result was reaffirmed in *Thompson* v. *Sanford*, 281 Ark. 365, 663 S.W.2d 932 (1984). (Section 21-9-303 has subsequently been amended to specifically state that political subdivisions shall carry liability insurance or become self-in-sured. Ark. Code Ann. § 21-9-303 (Supp. 1987).)

It is argued by the City of Little Rock that this court should return to a test previously used to determine whether a state employee could be liable for negligently injuring another even though the state was constitutionally prohibited from being made a defendant in her own courts. Ark. Const. art. 5, § 20. Using that test, the state employee could be liable when his negligence constituted a violation of a duty imposed upon him by law in common with all other people, as opposed to negligent conduct

arising out of a duty peculiar to his employment. *Kelly* v. *Wood*, 265 Ark. 337, 578 S.W.2d 566 (1979); *Grimmett* v. *Digby*, 267 Ark. 192, 589 S.W.2d 579 (1979). For instance, in *Kelly* this court held that a state trooper could be liable for negligently running a stop sign while driving his patrol car to meet a friend for dinner. Using that test, the city argues that the operation of an authorized emergency vehicle by the police officer was obviously unique to his employment and thus the city should be immune from tort liability.

■ The city's reliance on these cases is misplaced. The test used previously in those cases allowed an injured party to side step governmental immunity and seek relief against the employee when the duty of the employee breached was common to all people. It cannot be used by the city to create governmental immunity not otherwise available, as where a statute specifically provides that all political subdivisions shall carry liability insurance on their motor vehicles.

There is no indication in § 21-9-303 that the legislature intended to distinguish in any manner the circumstances to which it applied. In any event, we see no reason why a person injured by an emergency vehicle should be left without a remedy while persons may seek redress against a municipality for its employees' negligence in the operation of all other vehicles.

■ To avoid confusion in this area, it should be pointed out that the rule in *Grimmett* and *Kelly* allowing suit against certain government employees has subsequently been abolished by Ark. Code Ann. § 19-10-305 (1987). That statute specifically provides immunity to officers and employees of the State of Arkansas from civil liability for acts or omissions within the course and scope of their employment. See *Beaulieu* v. *Gray*, 288 Ark. 395, 705 S.W.2d 880 (1986).

The City of Little Rock also argues for reversal that the trial court erred in its jury instructions regarding the standard of care applicable to the operation of authorized emergency vehicles. The trial court instructed the jury pursuant to Arkansas Model Jury Instruction (AMI) 305 that it was the duty of both parties to use ordinary care for their own safety and the safety of others. An instruction was also given based upon AMI 911 which sets out certain statutory privileges for drivers of emergency vehicles.

These privileges allow the driver to proceed cautiously through a red light and give the right-of-way to emergency vehicles over other vehicles. The instruction also provided that these privileges do not relieve the driver of the emergency vehicle of the duty to exercise ordinary care.

The City of Little Rock argues that AMI 911 was incorrect, and contends that the jury should have been instructed that the city could be liable only if the driver acted with reckless disregard for the safety of others.

We first must address the issue which has been raised concerning whether this point of appeal has been properly preserved. The parties sent the city's proposed jury instructions to the judge before trial which included proposed instructions as to the city's standard of care. The instructions submitted by Weber defining negligence and holding the city to the standard of ordinary care were given over the objections of the city. The city attorney objected to the instructions for the record, stating with specificity how he contended such instructions incorrectly defined the city's standard of care. The proposed instructions which the city submitted prior to trial were never given to the court reporter to be included in the transcript. Realizing this omission after receipt of the trial transcript and while the case was on appeal, the city requested that the record be supplemented to include the proposed instructions. This court granted certiorari to allow the trial court to consider the city's request. Following a hearing, the trial court ruled that the instructions were not correctly proffered and refused to allow the record to be supplemented.

The city contends that submitting the instructions prior to trial and objecting to the instructions given preserved this issue for appeal. Weber argues that absent a proffer to the court reporter with a request that the instructions be made a part of the record, the objection is waived.

The procedure for preserving a jury instruction issue for appeal is stated in A.R.C.P. Rule 51 as follows:

> No party may assign as error the giving or the failure to give an instruction unless he objects thereto before or at the time the instruction is given, stating distinctly the matter to which he objects and the grounds of his objection, and no

party may assign as error the failure to instruct on any issue unless such party has submitted a proposed instruction on that issue.

Thus, when a party objects to an erroneous instruction of law which should not be given, all that is required is to timely state valid reasons for the objection. For instance, in *Tandy Corp.* v. *Bone*, 283 Ark. 399, 678 S.W.2d 312 (1984), the appellant argued the trial court erred in giving an instruction on punitive damages in a case involving an intentional tort. This court held it was not necessary for the appellant to proffer a substitute instruction to preserve that objection for appeal.

When the argument on appeal is a failure to give an instruction, then the party appealing must submit a proposed instruction on the issue. *Peoples Bank& Trust Co.* v. *Wallace*, 290 Ark. 589, 721 S.W.2d 659 (1986). In *Wallace*, the appellant argued that the instruction given by the trial court on the issue of agency did not instruct the jury on apparent or implied authority of an agent. The appellant had a duty to submit a proposed instruction on that issue, and its failure to do so prohibited that argument on appeal.

■ In this case, clearly an instruction had to be given on the standard of care by which the jury could measure the officer's conduct. AMI 305 and AMI 911 were given over the objection of appellant and in this connection trial counsel stated distinctly the matter to which he objected and the grounds of his objection. In fact the city stated for the record that in its opinion the proper standard of care was reckless disregard (for the safety of others) as opposed to ordinary care. This in our opinion constituted adequate compliance with A.R.C.P. Rule 51 to preserve the standard of care issue on appeal.

■ As relates to the appellant's contention that certain instructions it submitted to the court in advance of trial should have been given by the court, we hold that appellant has not sufficiently complied with A.R.C.P. Rule 51 to preserve this issue on appeal. Simply giving a set of instructions to the trial judge prior to trial is not sufficient to allow this court to address the propriety of appellant's proposed instructions. To so hold would place the responsibility of bringing a record up on appeal from which we can fully review the proceedings on the trial judge

rather than on the appellant, where this court has many times said it belongs. *Thigpen* v. *Polite*, 289 Ark. 514, 712 S.W.2d 910 (1986); *RAD-Razorback, Ltd. Partnership* v. *B.G. Coney Co.*, 289 Ark. 550, 713 S.W.2d 462 (1986).

■ Insofar as the applicable standard of care is concerned we hold that the trial court did not err in instructing that the city should be held to a standard of ordinary care as opposed to a standard of reckless disregard for the safety of others.

The trial court relied on AMI 911, which states in pertinent part that the driver of an emergency vehicle is entitled to operate the vehicle in accordance with the following traffic laws:

\*\*\*

(b) The driver of an emergency vehicle is not required to stop at a stop light but must slow down as necessary for safety and may then proceed cautiously past the signal.

\*\*\*

(d) An emergency vehicle has the right of way over other vehicles.

The part of the instruction which the city found objectionable states:

The existence of these privileges does not relieve the driver of an emergency vehicle of the duty to exercise ordinary care for the safety of others using the street.

The language in AMI 911 allowing the operator of an emergency vehicle to drive through a stop light is found in Ark. Code Ann. § 27-49-109 (1987). This statute is silent as to the standard of care for the driver. The statutory authority for instructing that the operator of an emergency vehicle has the right-of-way is found at Ark. Code Ann. §§ 27-37-202(e) and 27-51-901 (1987). Section 27-51-901(c) also provides:

This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway.

Arkansas Code Ann. §§ 27-51-202(a) and 27-51-204(b)(1) (1987) exempt drivers of emergency vehicles from the speed

limitations applicable to other vehicles. Those statutes also state that these exemptions "shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the street [or highway], nor shall it protect the driver of any emergency vehicle from the consequence of a reckless disregard of the safety of others." Although speeding was not alleged in this case, the city argues the standard of care should be the same.

Arkansas case law provides little guidance on this issue. In *Healey & Roth* v. *Balmat*, 189 Ark. 442, 74 S.W.2d 242 (1934), this court held that although an ambulance was on an emergency call, and had the superior right on the highway to other traffic, this "did not relieve it from the consequences of its negligence, if it were guilty of negligence." The negligence of an ambulance driver was also at issue in *Freeman & Cobb* v. *Reeves*, 241 Ark. 867, 410 S.W.2d 740 (1967). After holding that the trial court correctly submitted to the jury the issue of whether the privately owned ambulance was an authorized emergency vehicle, this court stated:

> Of course, even if an ambulance is exempted from observing certain traffic regulations and has the right-of-way under appropriate circumstances, it does not follow that this is an exemption from the duty to exercise care commensurate with the circumstances for the safety of other travelers or persons. . . . We think the evidence was sufficient to justify the submission of the question whether there was negligence on the part of appellants to the jury and to sustain the jury's finding that there was such negligence. . . .

These cases indicate that a driver of an emergency vehicle is held to a standard of ordinary care in the exercise of these statutory privileges. Decisions from other jurisdictions have dealt more directly with language similar or identical to the Arkansas statutes at issue. A Nebraska Supreme Court decision, *Lee* v. *City of Omaha*, 209 Neb. 345, 307 N.W.2d 800 (1981), quoted the following statute which is part of its legislation granting privileges to drivers of emergency vehicles:

> The provisions of this section shall not relieve the driver of such emergency vehicle from the duty to drive with due

regard for the safety of all persons, nor shall such provisions protect such driver from the consequences of his reckless disregard for the safety of others.

The officer in that case was judged by a standard of ordinary care and the Court said the officer "is required to observe the care which a reasonable prudent man would exercise in the discharge of official duties of a like nature under like circumstances."

*See also, McMillan v. Newton,* 306 S.E.2d 470 (N.C. 1983); *Franklin v. Dade County,* 230 S.E.2d 730 (Fla. 1970); *Mason v. Bitton,* 85 Wash. 2d 321, 534 P.2d 1360 (1975); *Brown v. City of New Orleans,* 464 So.2d 976 (La. App. 1985); *Brummett v. County of Sacramento,* 21 Cal.3rd 880, 582 P.2d 952 (1978).

We held that the instructions given by the trial court correctly stated the appropriate standard of care.

Affirmed.

GLAZE, J., not participating.