The Honorable Preston Scroggin State Representative 59 Marshall Road South Vilonia, AR 72173-9335
Dear Representative Scroggin:
I am writing in response to your request for my opinion on the following questions:
 1. Does the Enola-Mt. Vernon Water Authority qualify for tort immunity provided to "all other political subdivisions of the state," as provided in ACA 21-9-301?
 2. If the response to question 1 is "yes," then what effect does the subsequent passage of Act 1330 of 2003," The Water Authority Act," have on the Authority's tort immunity due to the change in the description of the Authority from a "political subdivision" to a "public body politic and governmental entity"?
 3. If Act 1330 of 2003 effectively extinguished the Authority's grant of tort immunity as a political subdivision, then does the Authority as a governmental entity enjoy tort immunity under the Arkansas or United States Constitutions, or any other legal precedent or authority?
You report that your questions arise from the following factual background:
 The Enola-Mt. Vernon Water Association became a Public Water Authority pursuant to Act 115 of 2001. The Authority is now seeking to become a member of the Arkansas Municipal League to avail itself of insurance coverage and other benefits offered by the League. The League is reluctant to allow joinder due to a question of whether the Authority would qualify for tort immunity under the provisions of Arkansas Code Annotated § 21-9-301, or any form of sovereign immunity under the state or federal Constitution.
RESPONSE
With respect to your first question, I believe the Enola-Mt. Vernon Water Authority (the "Authority"), which constitutes a "public body politic and governmental entity" under the Water Authority Act, A.C.A § 4-35-101 etseq., in all likelihood enjoys the limited immunity established by A.C.A § 21-9-301. With respect to your second question, I believeAct 1330 of 2003 merely standardized the various descriptive references to water authorities used interchangeably in Act 115 of 2001, under which the Authority was organized, consistently using the phrase "public body politic and governmental entity" and dropping, inter alia, the term "political subdivision." I do not believe the legislature, in failing to maintain the term "political subdivision" in the Water Authority Act, intended to deny water authorities the limited immunity they presumably were accorded in being designated "political subdivisions" inAct 115 of 2001. With respect to your third question, in addition to the limited statutory immunity noted above, I believe officers and employees of the Authority would be accorded qualified immunity against actions in federal court alleging violations of federal law.
Question 1: Does the Enola-Mt. Vernon Water Authority qualify for tortimmunity provided to "all other political subdivisions of the state," asprovided in ACA 21-9-301?
In my opinion, the Enola Mt. Vernon Water Authority (the "Authority") in all likelihood qualifies for tort immunity pursuant to A.C.A § 21-9-301. In addition, in instances alleging a federal cause of action, I believe the individual officers and employees of the Authority would be accorded a different qualified immunity.
Section 21-9-301 of the Code provides:
 It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance. No tort action shall lie against any such political subdivision because of the acts of its agents and employees.
This statute applies only in situations involving tort claims, and it establishes an express exception to tort immunity when a claim is covered by liability insurance. See City of Caddo Valley v. George,340 Ark. 203, 9 S.W.3d 481 (2000). Moreover, the immunity granted by this statute does not include immunity from liability for intentional torts.See Deitsch v. Tillery, 309 Ark. 401, 833 S.W.2d 760 (1992);Battle v. Harris, 298 Ark. 241, 766 S.W.2d 431
(1989).
Although A.C.A. § 21-9-301 speaks only in terms of the immunity of the political subdivision itself (and its "boards, commissions, agencies, authorities or other governing bodies"), the Arkansas Supreme Court has interpreted the statute as extending immunity to officers and employees of the political subdivisions as well when they negligently commit acts or omissions in their official capacities. See, e.g., Autry v. Lawrence,286 Ark. 501, 696 S.W.2d 315 (1985) (stating that it was the intent of the General Assembly in enacting A.C.A. § 21-9-301 to grant immunity to municipal agents and employees for acts of negligence committed in their official capacities).
A different "qualified immunity" may apply if a plaintiff alleges a violation of federal law against the officers or employees of a governmental entity. Under the doctrine of qualified immunity, an individual is immune from suit if he undertook the actions complained of in good faith in the performance of his duties and the acts do not violate any clearly established constitutional right. Saucier v. Katz,533 U.S. 194 (2001); Harlow v. Fitzgerald, 457 U.S. 800 (1982). The test for the applicability of qualified immunity turns upon the "objective legal reasonableness of the action," assessed in light of legal rules that were "clearly established" at the time the action was taken. Id.;Anderson v. Creighton, 483 U.S. 635 (1987). The immunity is "qualified" because it does not apply where the activity is in violation of clearly established law that a reasonable person would have known. Id.; Robinsonv. Beaumont, 291 Ark. 477, 725 S.W.2d 839 (1987); Matthews v. Martin,280 Ark. 345, 658 S.W.2d 374 (1983).
You have inquired whether the Authority qualifies as one of the "other political subdivisions of the state" entitled to the statutory immunity set forth at A.C.A § 21-9-301. A water authority that falls under the current Water Authority Act, A.C.A § 4-35-101 et seq. (Supp. 2003), as is the case in this instance, is statutorily defined as being a "public body politic and governmental entity." A.C.A § 4-35-103(10). See also A.C.A §§4-35-101, -105(c) and -203(a)(1) (repeating this definition verbatim). Subsection 4-35-104(b) declares:
 All acts and activities of a water authority performed pursuant to the authority of this chapter are legislatively determined and declared to be essential governmental functions.
Section 4-35-108 further declares:
 Each project by a water authority and all income from each project is determined and declared by the General Assembly to be public property used exclusively for a public purpose and shall be exempt from ad valorem taxation by all taxing authorities.
In light of these declarations, I believe the legislature clearly intended to designate water authorities as "public" and "governmental" to an extent that would bring them within the ambit of A.C.A § 21-9-301.
Having ventured this conclusion, I feel obliged to offer a caveat. In the attached Ark. Op. Att'y Gen. No. 2002-002, one of my predecessors addressed, inter alia, whether the employees of a public water authority that converted from private to public status pursuant to Act 115 of 2001
qualified to participate in the Arkansas Public Employees Retirement System (APERS). In addressing whether a water authority qualified as a "public employer" for purposes of determining eligibility, my predecessor observed: "[A]lthough the statutory scheme considered in isolation would appear to support declaring water authority employees eligible for participation in APERS, I believe such participation might invite constitutional attack if, notwithstanding their designation as `public,' the water authorities' activities retain a distinctly `private' character." I will not repeat my predecessor's analysis here, instead merely noting that the question of how the Authority's activities should be characterized is one of fact that I am neither equipped nor authorized to address. Although I suspect that a court would find activities conducted pursuant to the current Water Authority Act to be sufficiently public to withstand a challenge, only a court could properly assess whether a formerly private entity is now sufficiently "public" in its activities to qualify as a governmental entity entitled to statutory immunity. However, I can and will opine that if the facts with respect to the Authority are consistent with the legislature's designation of a water authority as a "public body politic and governmental entity," I believe the Authority and its employees and officers would enjoy the immunities discussed above.
Question 2: If the response to question 1 is "yes," then what effect doesthe subsequent passage of Act 1330 of 2003, "The Water Authority Act,"have on the Authority's tort immunity due to the change in thedescription of the Authority from a "political subdivision" to a "publicbody politic and governmental entity"?
Your question relates to the fact that A.C.A § 21-9-301 extends its limited immunity to what it terms "political subdivisions" — a designation the legislature applied to a reconstituted water authority in § 6 of Act 115 of 2001, see former 4-35-206(b)(1), but which it deleted from the legislation in § 3 of Act 1330 of 2003, see current A.C.A §4-35-203(a). You are apparently concerned that the legislature may have intended by this deletion to withdraw what had formerly been the statutory immunity available to water authorities.
I do not believe your concern on this score is warranted. In attempting to determine the legislature's intent in making the change in terminology referenced in the preceding paragraph, I am struck by several facts: first, the legislative descriptions of a water authority inAct 115 of 2001 were not uniform, ranging from "body politic," § 1, to "body political and governmental entity," § 2(9), to "a body corporate and politic and a political subdivision of the state," § 6; and, secondly, the legislative description of a water authority in Act 1330 of 2003 is consistent and uniform — namely, a "public body politic and governmental entity." Act 1330, § 3; see current A.C.A § 4-35-101, -103(10), -105(c) and -203(a)(1). Nothing in Act 1330 of 2003 suggests any restriction of the governmental character of a water authority in comparison to the governmental character of a water authority as set forth inAct 115 of 2001. Rather, it appears that in the course of incorporating the provisions of Act 115 into the new Water Authority Act, the legislature only exhibited a salutary impulse to standardize its terminology, consistently using the same term to describe a water authority. I do not find it significant that the legislature did not settle on the particular term "political subdivision" to describe a water authority, given that the term "public body politic and governmental entity" more than adequately conveys the legislature's sense that a water authority's activities are of a governmental nature. In my opinion, if an improvement district qualifies as a "political subdivision" for purposes of affording statutory immunity under A.C.A § 21-9-301, it follows that a water authority as defined in the Code qualifies as well. As used in A.C.A §21-9-301, I believe the term "political subdivision" is essentially coextensive in its scope with the definition offered at A.C.A §15-6-103, which includes "any other unit of local government . . . authorized by law to perform governmental functions." In my opinion, a reviewing court would very likely conclude that a water authority qualifies as a political subdivision under this definition.
For your information, I am enclosing a copy of Ark. Op. Att'y Gen. No.2002-345, in which one of my predecessors discussed at some length what types of entities qualify as "political subdivisions" under the Arkansas Code. I will not repeat my predecessor's analysis here. However, I will note a water authority appears to fall squarely within the category of entities to which that designation has regularly been applied. Accordingly, I believe a court would very likely extend the immunity granted by A.C.A § 21-9-301 to the Authority.
Question 3: If Act 1330 of 2003 effectively extinguished the Authority'sgrant of tort immunity as a political subdivision, then does theAuthority as a governmental entity enjoy tort immunity under the Arkansasor United States Constitutions, or any other legal precedent orauthority?
This question would appear to be moot in light of my responses to your previous questions. However, I will reiterate my belief that, in addition to the statutory immunity accorded by A.C.A § 21-9-301, the qualified immunity discussed in my response to question 1 in all likelihood would apply to the Authority.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
Enclosures